IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THERESA M. YOUNG, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-21-880 |
| LLOYD AUSTIN, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Theresa M. Young ("Young" or "Plaintiff"), proceeding *pro se*, brings this employment discrimination case against Defendant Lloyd Austin, Secretary of Defense (the "Secretary" or "Defendant"), seeking injunctive and monetary relief for assorted violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Young claims that she was the victim of discrimination based on her stress and anxiety disorders during her three-month probationary employment with the Uniformed Services University of the Health Sciences ("USUHS"), a federal agency within the Department of Defense. (Am. Compl. ¶¶ 4, 46, 49, 59, 64, ECF No. 25.) Now pending are Defendant's Motion to Dismiss or for Summary Judgment (ECF No. 35), and Plaintiff's Motion to Reconsider Court Appointed Attorney (ECF No. 29). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Plaintiff's Motion to Reconsider Court Appointed Attorney (ECF No. 29) is DENIED and Defendant's Motion to Dismiss (ECF No. 35) is hereby GRANTED.

**BACKGROUND**

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). As Plaintiff is proceeding pro se, this Court also affords her pleadings a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *accord White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989). Theresa M. Young is a Maryland resident and a military veteran. (Am. Compl. ¶ 13.) In February 2020, she was hired by the Uniformed Services University of the Health Sciences ("USUHS") as a Program Support Assistant. (*Id.*)[1] On May 26, 2020, Young began a probationary employment period.[2] (*See id.* ¶¶ 13, 47, 51.) Exactly three months later, on August 26, 2020, she was terminated. (*Id.* ¶ 38.)

According to the Amended Complaint, Young's brief probationary employment was marred by intense personal conflicts with her immediate supervisor, Dr. John Mark Young ("John Mark").[3] (*Id.* ¶¶ 15, 17, 18, 40, 43.) After Young told John Mark that he was making her uncomfortable in June 2020, John Mark adopted "a revenge, grudge, and vindictive-type personality" towards her. (*Id.* ¶¶ 15–17, 23.) Young claims John Mark aggressively confronted

---

[1] Defendant Lloyd Austin is the Secretary of Defense, which oversees USUHS. (*Id.* at 4.) The Merit Systems Protection Board was terminated as the named defendant in this case when Plaintiff filed her Amended Complaint against Defendant Austin. (*See* ECF No. 23.)

[2] Young does not describe the terms or conditions of her employment in her Amended Complaint. According to Young's Form 50-B and her August 26, 2020 Notice of Termination, her appointment was "subject to completion of [a] two year probationary period," during which she was required "to demonstrate [her] qualifications for continued employment." (MSPB Evid. 35-37, ECF No. 1-1; May 26, 2020 Probationary Appointment 2, ECF No. 35-3.) *See Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity").

[3] Dr. John Mark Young is not related to Plaintiff Theresa Young.

2

her in her cubicle, threatened to scald her with hot water, and attempted to hit her. (*Id.* ¶¶ 18–19, 23, 30–31, 44.) She also alleges John Mark interfered with her responsibilities by refusing to inform her of basic office procedures, refusing to provide a mentor or a clear definition of her duties, excluding her from meetings, and refusing to allow her to answer the phone, create a voicemail, or sign for deliveries. (*Id.* ¶¶ 27, 49.) Finally, Young claims John Mark made it difficult for her to access her benefits and compensation: Per the Amended Complaint, John Mark obstructed Young's attempts to obtain a parking spot and a transit subsidy, declined to assist her with difficulties obtaining her paychecks, and pressured her to classify bereavement leave as leave without pay. (*Id.* ¶¶ 24–26.)

Young claims to suffer from stress and anxiety disorders that interfere with her ability to "concentrat[e], think[], communicat[e], and work[]." (*Id.* ¶¶ 33–35, 46, 55–56.) On August 20, 2020, she was hospitalized due to stress caused by a workplace confrontation the previous day. (*Id.* ¶ 35.) On August 26, 2020, Plaintiff visited a psychologist "due to the psychological impact of the actions of John Mark." (*Id.* ¶ 37.) According to the Amended Complaint, Plaintiff informed John Mark and Human Resources of her condition, her hospitalization, and her psychologist visit. (*Id.* ¶¶ 37, 55.) She alleges USUHS refused multiple reasonable requests to accommodate her conditions, and that this failure interfered with her ability to do her job. (*Id.* ¶¶ 55–57.)

Young further insists that her attempts to report John Mark's conduct exacerbated the situation. Young contacted Human Resources to report John Mark's conduct and request reasonable accommodations for her anxiety, such as reassignment. (*Id.* ¶¶ 19–25, 34, 55–56.) She also spoke with Supervisor's manager, James Manusco, to report John Mark's behavior.

(*Id.* ¶ 20.) Each party denied her requests and informed John Mark that she had contacted them, contributing to further hostile conduct. (*Id.* ¶¶ 20–22, 25.) She also took steps to distance herself from John Mark. On August 17, 2020, Young worked with security to arrange an alternative working location in the library—but John Mark would not allow her to work there. (*Id.* 28–29.) On August 25, 2020, she obtained a restraining order against John Mark. (*Id.* ¶ 36.) On August 26, 2020, less than 24 hours after this restraining order was served, Young was terminated. (*Id.* ¶ 38.).

On August 28, 2020, Plaintiff filed a charge with the Merit Systems Protection Board ("MSPB") (*Id.* ¶ 5; MSPB Evid. 2, ECF No. 1-1.) On October 1, 2020, the MSBP denied her requested relief, and on November 2, Young appealed to the United States Court of Appeals for the Federal Circuit, alleging violations of the Americans with Disabilities Act ("ADA"), among other statutory and regulatory provisions. (MSPB App. 5, ECF No. 1; Statement of Discrim., ECF No. 5) On April 7, 2021, the Federal Circuit held that it lacked jurisdiction over Young's ADA claims and transferred this case to this Court. (ECF Nos. 23, 17.) Plaintiff filed the operative Amended Complaint with this Court on April 30, 2021, (ECF No. 25), and submitted a Motion to Appoint Counsel on May 3, 2021 (ECF No. 27). This Court issued an Order denying that motion on May 13. (ECF No. 28.) Since that time, Plaintiff has filed a Motion to Reconsider the denial of her request for court-appointed counsel (ECF No. 29), and Defendant has filed a Motion to Dismiss for Failure to State a Claim (ECF No. 35). Both motions are now ripe for review.

## STANDARD OF REVIEW

This Court is mindful of its obligation to liberally construe the pleadings of pro se litigants. *See Erickson*, 551 U.S. at 94. Accordingly, this Court "must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989). Nonetheless, "a plaintiff's status as *pro se* does not absolve him of the duty to plead adequately," *Stewart v. City of Baltimore*, No. RDB-14-03567, 2015 WL 5604279, at *1 (D. Md. Sept. 23, 2015), and liberal construction does not require this Court to ignore a clear failure in the pleading to allege facts which set forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or to "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille,*

*LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines*, 822 F.3d at 166-67. However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Accordingly, this Court shall take notice of documents submitted in connection with Young's MSPB charge and her appeal to the Federal Circuit,

while construing Defendant's motion strictly as a motion to dismiss. *See Dethridge v. Esper*, No. GLR-20-606, 2021 WL 1751120 (D. Md. May 4, 2021) ("Courts in this district have routinely determined that EEO documents . . . are integral documents in employment discrimination actions.").

## ANALYSIS

### I. Plaintiff's Motion to Reconsider Court Appointed Attorney (ECF No. 29)

As a preliminary matter, Young asks this Court to reconsider its denial of her motion for a court-appointed attorney. The Federal Rules of Civil Procedure provide a district court broad authority to reconsider orders that do not constitute final judgments in a case. Fed. R. Civ. P. 54(b) (providing that such orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). Nevertheless, while 28 U.S.C. § 1915(e)(1) grants a district court discretion to appoint counsel to represent an indigent party in a civil case, this discretion should be exercised only in exceptional cases. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *accord Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no right to court-appointed counsel; rather, an indigent claimant must demonstrate "exceptional circumstances," *Miller v. Simons*, 814 F.2d 962, 966 (4th Cir. 1987), such as where a "pro se litigant has a colorable claim but lacks the capacity to present it." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989).

Young fails to show any "exceptional circumstances" that justify granting this motion. In support of her Motion to Reconsider, Young notes that she cannot afford an attorney, and that "she is a disabled person, non-attorney, and disabled veteran." (Mot. to Reconsider 1,

ECF No. 29.) These arguments reiterate verbatim the assertions in Young's initial Motion for Court Appointed Counsel (ECF No. 27), and are equally unavailing here. *Cf. Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (holding that a motion to reconsider "may not be used to relitigate old matters"). As this Court has previously observed, the Plaintiff "has demonstrated the wherewithal to . . . articulate the legal and factual basis of her claims." *See Loper v. Howard Cnty. Pub. Schools Sys.*, No. RDB-20-2184, 2021 WL 689963 (D. Md. Feb. 23, 2021); *Stokes v. Matteo*, No. RDB-11-3398, 2012 WL 5879131, at *3 (D. Md. Nov. 20, 2012). Additionally, as discussed below, a hearing and discovery will not be necessary in this case, thus mitigating the necessity of counsel. Accordingly, Plaintiff's Motion to Reconsider Court Appointed Attorney (ECF No. 29) is **DENIED**.

## II. Defendant's Motion to Dismiss (ECF No. 35)

Young brings suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.[4] As relevant here, the ADA provides that no employer may "discriminate against

---

[4] The Amended Complaint is littered with references to additional statutory and regulatory provisions. Most are cited in conclusory fashion. *See, e.g.*, 5 U.S.C. § 2302(b)(8) (protecting agency whistleblowers against retaliation); 5 C.F.R. 335.103(b) (prohibiting discrimination in agency promotion plans); 5 C.F.R. 315.803(b) (providing that any probationary employee who "has completed one year of current continuous service" must be given notice and an opportunity to respond within a reasonable time). Absent any supporting allegations, these citations fail to state a claim: This Court's obligation to afford pleadings a liberal construction does not require it to "conjure up questions never squarely presented," or to "construct full blown claims from sentence fragments." *Beaudett*, 775 F.2d at 1278.
  Other citations plainly offer no valid predicate for a viable claim: First, Young cites 5 C.F.R. § 315.804, which provides that an agency terminating a probationary employee must provide written notice that, "as a minimum, consist[s] of the agency's conclusions as to the inadequacies of his performance or conduct." 5 C.F.R. § 315.804(a). However, according to her own Amended Complaint, Young "was emailed a letter of termination on August 26, 2020." (Am. Compl. ¶ 38.) This letter, included with Young's MSPB charge, adequately delineates the agency's conclusions regarding Young's performance. (*See* MSPB Evid. 35–37.) Second, she claims that her due process rights were "continually violated" because Richard Thomas, the interim President of USUHS, blocked Appellant's right to a grievance through the Merit Systems Protection Board by prohibiting her from accessing an on-site mediation. (*Id.* ¶ 45.) However, the record indicates that Young was able to exercise her right to be heard before the Merit Systems Protection Board and the United States Court of Appeals for the Federal Circuit. (*See* MSPB App. 2, 25; Fed Cir. Transfer Order, ECF No. 17.)

a qualified individual on the basis of disability in regard to job application procedures, . . . hiring, advancement, or discharge . . . , employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also* 5 CFR § 315.806(b) (extending ADA coverage to probationary employees). Affording the Amended Complaint a liberal construction, Young raises four ADA claims: wrongful discharge, a hostile work environment, a failure to make reasonable accommodations, and retaliation. (Am. Compl., ECF No. 25 ¶¶ 49, 59, 64.) In his Motion to Dismiss, Defendant notes that Plaintiff supports these claims with "a litany of personal conflicts unrelated to disability or retaliation." (Def.'s Mem. Supp. 1, ECF No. 35-1.) A thorough review of the Amended Complaint and Young's MSPB charge reflects that she has failed to allege a plausible claim. While Young has alleged a contentious relationship with her supervisor, she nowhere indicates discrimination on the basis of her disability, and fails to state many of the essential elements of her claims.[5]

A. Eligibility for Relief

As a threshold matter, Plaintiff's discrimination claims require her to demonstrate that she is within the ADA's protected class, requiring that: (1) she had a disability at the time of the adverse action; and (2) she was qualified to perform the essential functions of her position. *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 622 (D. Md. 2014); *see, e.g., Haulbrook v. Michelin North Am.*, 252 F.3d 696, 702 (4th Cir. 2001) (wrongful discharge); *Rock*

---

[5] Young's only response is to challenge the procedural sufficiency of Defendant's motion, arguing *inter alia* that Defendant failed to serve her with a copy of his Motion to Dismiss or his Notice of Appearance, and that the pending motion was filed on August 11, one day after the August 10, 2021 deadline set by this Court. (Pl.'s Resp. 2–3, ECF No. 37; Pl.'s Supp. Resp. 2–3, ECF No. 39.) Each of these arguments is unavailing. A cursory review of the docket reveals Defendant's Motion to Dismiss was properly filed on August 10, 2021. (*See* Def.'s Repl., ECF No. 35; Def.'s Mot. 1). Additionally, Defendant offers envelopes demonstrating that both contested filings were properly served by mail. (ECF Nos. 38-1, 38-2.)

*v. McHugh*, 819 F. Supp. 2d 456, 473 n.13 (D. Md. 2011) (hostile work environment); *Evans v. Potter*, RDB-02-4043, 2003 WL 24085317, at *4 (D. Md. 2003) (reasonable accommodation). The ADA defines "disability" as: "(1) 'a physical or mental impairment[6] that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such impairment' (the 'record-of' prong); or (3) 'being regarded as having such an impairment' (the 'regarded-as' prong)." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014); *see* 42 U.S.C. § 12101(1). A "qualified individual" includes: "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(a)(8).[7]

Plaintiff alleges that she "is a qualified individual with a disability within the meaning of [42 U.S.C. § 12111(a)(8)] in that [she] is an individual with a disability." (Am. Compl. ¶ 48.) Liberally construed, the Amended Complaint alleges that Plaintiff suffers from "stress and anxiety disorders" that interfere with her ability to "concentrat[e], think[], communicat[e], and work[]." (*Id.* ¶¶ 33–35, 46, 55–56.) Young claims that these conditions were aggravated by her

---

[6] Applicable regulations define "physical or mental impairment" to include "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). Whether an individual is "substantially limited" requires an "individualized assessment," *id.* § 1630.2(j)(1)(iv), evaluating "as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." *Id.* § 1630.2(j)(4)(i).

[7] The "essential functions" of an employment position are defined by regulation as the "fundamental job duties" of the position. 29 C.F.R. § 1630.2(n)(1). "A job function may be considered essential because, among other reasons, the position exists to perform that function, there are a limited number of employees to whom that function can be assigned, or the function is so specialized that the employee was hired specifically to perform it." *Hill v. Verizon Md., Inc.*, No. RDB-07-3123, 2009 WL 2060088, at *9 (D. Md. July 13, 2009); *see also* 42 U.S.C. § 12111(8) (instructing courts to consider the employer's judgment regarding essential functions, and look to any written job description); 29 C.F.R. §§ 1630.2(n)(1)–(n)(2) (providing factors for a court to examine when determining whether a job function is essential).

interactions with John Mark, leading her to seek psychological counseling and hospitalization. (*Id.* ¶¶ 35–37; *see also* MSPB Evid. 12, 14, 16.) This is debatably sufficient to establish that Plaintiff suffers from a disability under the "actual-disability" prong of the ADA definition.[8] However, Plaintiff entirely fails to allege that she "can perform the essential functions of the employment position that [she] holds or desires." 42 U.S.C. § 12111(a)(8). The Amended Complaint does not include a job description, and is entirely devoid of allegations regarding Plaintiff's essential responsibilities or her ability to perform them. Absent such details, Plaintiff cannot show she is a "qualified individual" within the ADA's protected class, notwithstanding her disability. This deficiency is fatal to her claims and warrants dismissal.

B. <u>Wrongful Discharge</u>

Even were Plaintiff able to overcome this threshold, her individual theories fall short. First, a wrongful discharge claim requires Plaintiff to show that "(1) [she] is within the ADA's protected class; (2) [she] was discharged; (3) at the time of [her] discharge, [she] was performing the job at a level that met [her] employer's legitimate expectations; and (4) [her] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook*, 252 F.3d at 702. At no point in the Amended Complaint does Young allege that her job performance met her employer's "legitimate expectations." (Def.'s Mem. Supp. 12.)

---

[8] Young also claims that she informed her supervisor and human resources of her conditions on multiple occasions, (Am. Compl. ¶¶ 55.), and offered in connection with her MSPB charge a notice from the Department of Veterans Affairs stating that official records indicate "Young is rated at 60% for a service-connected disability." (MSPB Evid. 1.) This is nonetheless inadequate to show that she was "regarded as" a person with a disability for ADA purposes. "[I]t is insufficient for a plaintiff to merely show that the 'employer was aware of the plaintiff's alleged impairment; rather, the plaintiff must demonstrate that, based on the perceived impairment, the employer regarded the employee as *disabled within the meaning of the ADA*." *Hill*, 2009 WL 2060088, at *8. This analysis "focuses on the reactions and perceptions of the employer's decisionmakers." *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 172–73 (4th Cir. 1997). Regardless of Young's designation by Veterans Affairs, there is nothing in the record to suggest that John Mark, human resources, or other employees at USUHS affirmatively perceived Young as disabled.

11

Although Young's rebuttal to her Notice of Termination, appended to her MSPB charge, states that she "demonstrated exemplary conduct and performance," (MSPB Evid. 39), this is insufficient to salvage her claim, as she avers no facts that warrant a reasonable inference of discrimination. The Notice of Termination indicates that Young was fired for performance-related reasons, (MSPB Evid. 35–37), and Plaintiff fails to suggest these reasons are pretextual. While Plaintiff claims that she "never received a write-up . . . about her person from any person other than John Mark," that the Notice of Termination was based wholly on John Mark's observations, and that she "disagrees with the termination in its entirety," (Am. Compl. ¶¶ 32, 52; MSPB Evid. 39), none of these assertions has any relationship with her anxiety disorder. Accordingly, Plaintiff fails to state a claim for wrongful termination under the ADA.

### C. Hostile Work Environment

Second, Plaintiff claims that John Mark's aggressive conduct created and perpetuated a hostile work environment. To state an ADA hostile work environment claim, Plaintiff must allege that: "(1) [she] is a qualified individual with a disability; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Richardson v. Md. Transit Admin.*, No. RDB-18-0884, 2019 WL 1002597, at *8 (D. Md. Mar. 1, 2019) (citing *Fox*, 247 F.3d at 177; *Bass*, 324 F.3d at 765). The allegations in the Amended Complaint, taken as true, plausibly allege that Young was subjected to "severe or pervasive" harassment in the form of John Mark's aggressive comments, argumentative and confrontational behavior, and threats of violence. (Am. Compl. ¶¶ 19, 24–27, 29–31, 33.) *Cf. Harris v. Forklift Sys., Inc.*, 510

12

U.S. 17, 21 (1993) (finding severe and pervasive harassment where "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult'" (citation omitted)).

Nevertheless, the Amended Complaint is completely devoid of facts to suggest that this harassment "was based on her disability." In *Ziskie v. Mineta*, 547 F.3d 220 (4th Cir. 2008), a sexual harassment case, the United States Court of Appeals for the Fourth Circuit held that "harassment due to personality conflicts will not suffice" as a predicate for a Title VII hostile work environment claim. 547 F.3d at 226. Instead, a plaintiff must plead that the harassment was "a product of [discriminatory] animus rather than the kind of personality conflict that pervades many a workplace." *Id.* at 227. In the instant case, nothing suggests John Mark's conduct was a product of discriminatory animus. At no point in the Amended Complaint does Plaintiff claim that John Mark targeted her because of her anxiety or otherwise referenced her disability during their confrontations, however severe those confrontations may have been. Moreover, over many emails to human resources—referenced in the Amended Complaint and appended to Plaintiff's MSPB charge—not once did Young allege disability discrimination. (MSPB Evid. 21, 28, 48–49, 51–52.) *Cf. Ziskie*, 547 F.3d at 226 ("That [Plaintiff] did not get along with others is clear, but it is anything but clear that this unfortunate state of affairs had much to do with [discrimination]."). As Young fails to plead that the alleged harassment she experienced at USUHS was "based on her disability," her hostile work environment claim warrants dismissal.

  D. Failure to Accommodate

Third, Plaintiff alleges USUHS failed to accommodate her stress and anxiety disorders. The ADA defines discrimination to include a failure to make "reasonable accommodations to

the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(a). A failure to accommodate claim requires Plaintiff to plead: "'(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodation.'" *Wirtes v. City of Newport News*, 996 F.3d 234, 238–39 (4th Cir. 2021) (citation omitted). But "[n]ot every job-related request by a disabled employee that is denied by her employer will subject the employer to liability for failure to provide a reasonable accommodation." *Fierce v. Burwell*, 101 F. Supp. 3d 543, 550 (D. Md. 2015). Rather, Plaintiff must show "a causal relationship between the disability and the requested accommodations." *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997); *accord Kande v. Dimensions Health Corp.*, No. GJH-18-2306, 2020 WL 7054771, at *8 (D. Md. Dec. 2, 2020). Young has adequately pled that she is disabled, and that her employer had notice of her disability. Nonetheless, even assuming she could plead that she was capable of performing her essential duties, she fails to plausibly allege causation.

To plead causation, Plaintiff must allege that "'the requested accommodation was necessary in order for [her] to perform the essential functions of [her] job.'" *Fierce*, 101 F. Supp. at 550 (quoting *Gaines*, 107 F.3d at 1175). In *Shivers v. Saul*, No. JKB-19-2434, 2020 WL 7055503 (D. Md. Dec. 2, 2020), a technician working for the Social Security Administration alleged that SSA failed to accommodate his cognitive disabilities when it denied requests for a flexible working schedule, a larger monitor, periodic breaks, and an assistant during meetings. 2020 WL 7055503, at *1. Although the plaintiff insisted these changes would alleviate his

14

symptoms, this Court dismissed the case, observing that he had offered no allegations as to why the accommodations were "necessary" to perform the essential functions of his role. *Id.* at \*5. Similarly, in *Fierce v. Burwell*, 101 F. Supp. 3d 543 (D. Md. 2015), an employee of the Department of Health and Human Services alleged that DHHS failed to accommodate her depression when it denied her request to telework one day per week. 101 F. Supp. 3d at 549. Although the plaintiff had established that "teleworking may have helped alleviate plaintiff's depression, if only because it would remove her from a stressful environment," she offered no evidence "that her disability *required* her to work from home." *Id.* at 550 (emphasis in original). Moreover, as plaintiff had only requested permission to telework to avoid hostility from her supervisor, this Court determined that she had not "connected the dots between her teleworking request and her disability." *Id.* at 550 n.6.

The same deficiencies are present here. Young alleges that human resources denied her requests "to provide reasonable accommodations for her stress and anxiety disorders." (Am. Compl. ¶ 56). Specifically, she allegedly asked human resources to "intervene or reassign her because it appeared that John Mark would not relent in his aggression," and requested an alternative working location on August 17, 2020. (*Id.* ¶¶ 28-29, 34; MSPB App. 36-37; MSPB Evid. 20, 27) *See* 42 U.S.C. § 12111(9)(B) (providing that a "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position"); *accord Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 (4th Cir. 2020). However, Young fails to "connect the dots" between these requests and her anxiety disorder. *Cf. Fierce*, 101 F. Supp. 3d at 550 n.6. Here, as in *Fierce*, Plaintiff's requests were driven solely by a desire to escape a contentious relationship with her supervisor. While Young claims that these incidents

15

aggravated her symptoms, she fails to allege that the specific accommodations she requested were *necessary*, rather than merely *helpful*, for her to perform the essential functions of her role. *Cf. Shivers*, 2020 WL 7055503, at *5. Accordingly, Plaintiff is unable to plead causation, and her failure to accommodate claim fails as a matter of law.

    E.  Retaliation

Title VII of the Civil Rights Act, which incorporates the ADA, makes it unlawful "for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3; *see also* 42 U.S.C. § 12203(a). To state a retaliation claim, Young must allege that "(1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action." *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001); *accord Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Unlike her discrimination claims, Plaintiff's retaliation claim does not require her to allege that she is a "qualified individual with a disability." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 577 (4th Cir. 2015); *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 54 n.1 (4th Cir. 2002).

In the Amended Complaint, Young alleges that she faced retaliation for reporting John Mark's behavior "through several protected channels." (Am. Compl. ¶ 49.) Specifically, she claims human resources forwarded her complaints to John Mark, resulting in formal discipline and additional harassment. (*Id.* ¶ 21, 49.) She also places particular emphasis on the fact that she was terminated "less than 24 hours after [John Mark was] served the restraining order."

(*Id.* ¶¶ 38, 49; *see also* MSPB App. 6, 8, 17, 26, 30, 35.)[9] These allegations adequately plead several adverse actions that are attributable to her employer. *See Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 54, 64, 67 (2006) (concluding that Title VII's antiretaliation provision is "not limited to discriminatory actions that affect the terms and conditions of employment"); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018) ("Title VII's antiretaliation provision is more expansive than . . . the statute's antidiscrimination provisions."). Nevertheless, Young fails to establish that she engaged in any protected conduct within the ambit of the ADA.

As a threshold matter, Title VII protects employees engaged in "activities opposing discrimination"—it does not shield any and all communications through official channels. *Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 685 (4th Cir. 2009). The Fourth Circuit "has articulated an expansive view of what constitutes oppositional conduct." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). Nevertheless, "to qualify as protected activity, an employee's complaints must still communicate 'a belief that the employer has engaged in . . . a form of employment discrimination.'" *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018) (quoting *Crawford v. Metrop. Gov't of Nashville and Davidson Cnty.*, 555 U.S. 271, 276 (2009)). Accordingly, "[e]mployees engage in protected oppositional activity when, inter alia, they complain to their superiors about suspected violations of Title VII," *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015), while "[c]omplaints about management activities that would not constitute unlawful discrimination do not count as protected activity."

---

[9] Young also claims that she was "barred from accessing the base" for a scheduled mediation two months after her termination, and that she received a letter that with "word-for-word" retaliation. (*Id.* ¶ 44.) However, Young does not indicate what protected activity allegedly caused this adverse action, nor does she provide any specific allegations in support of this claim.

17

*Chang Lim*, 310 F. Supp. 3d at 604 (citing *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216–17 (4th Cir. 2002); *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 248 (D. Md. 2016)).

Accepting the allegations in the Amended Complaint as true, Young has failed to allege that she engaged in conduct opposing a discriminatory practice. Although Young insists that she informed human resources that she suffers from an anxiety disorder, and that John Mark's conduct aggravated her conditions, (Am. Compl. ¶¶ 35, 37, 55–56) she nowhere claims to have told human resources, security, or the police that she believed John Mark was discriminating against her. To the contrary, as indicated above, each of Young's emails to human resources consist only of general grievances regarding John Mark's putative conduct—and appear devoid of allegations of discrimination. (MSPB Evid. 21, 28, 48–49, 51–52.) *See Bowman*, 173 F. Supp. 3d 242, 248 (D. Md. 2016) ("General complaints of unfair treatment are not protected activity."). Nor can this Court infer she made such a complaint based on the underlying facts: As discussed above, although Young has alleged a deteriorating working relationship with her supervisor and several concrete instances of harassment, she fails to plead that these incidents were "a product of [discriminatory] animus rather than the kind of personality conflict that pervades many a workplace." *Cf. Ziskie*, 547 F.3d at 227. Absent such allegations, Young's complaints do not qualify as protected activities under Title VII and cannot provide a predicate for an ADA retaliation claim.[10]

---

[10] Young's requests for reassignment and an alternative working location, if construed as requests for reasonable accommodations, could constitute protected activities. *See* 42 U.S.C. § 12203(a); *Haulbrook*, 252 F.3d at 706. *Cf. Jacobs*, 780 F.3d at 577 ("[Plaintiff] engaged in protected activity; namely, requesting an accommodation for her social anxiety disorder."). Nevertheless, a retaliation claim requires a plaintiff to allege "but-for" causation. *E.g.*, *O'Malley v. Trader Joe's East, Inc.*, No. RDB-19-3273, 2020 WL 7398806 (D. Md. Dec.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED this 14th day of October, 2021, that Defendant Lloyd Austin's Motion to Dismiss (ECF No. 35) is GRANTED, and Young's Amended Complaint is DISMISSED with prejudice.[11] Plaintiff's Motion to Reconsider Court Appointed Attorney (ECF No. 29) is DENIED.

A separate order follows.

_____/s/_____
Richard D. Bennett
United States District Judge

---

17, 2020); *Nelson-Rogers v. Kaiser Permanente*, No. GJH-17-3326, 2020 WL 917067, at *11 (D. Md. 2020). Young fails to claim that John Mark or USUHS retaliated against her for these requests in any manner.

[11] "The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013). Dismissal with prejudice is appropriate here as Plaintiff has failed to offer any allegations of discrimination in previous amendments to the complaint, (ECF No. 25), and has offered no substantive response to Defendant's Motion to Dismiss. (*See* ECF Nos. 37, 39.) *Cf. Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008).